Your Honor, my client... At least I'm consistent. Of course. Of course. My client was convicted... You're Henderson. Yes, Your Honor. Okay, I recognize you now. The light's been hitting me in the face. It was that morning traffic. Morning traffic. Yeah, all right. Okay, good to see you. My client was convicted via a guilty plea of making some false or causing some false statements made by virtue of a press release and a couple of website releases which touted the stock in his company. The facts in which he did that are particularly relevant to the appeal. He entered a guilty plea to those counts. Also, there was a criminal contempt count based on violating an SEC order, which really isn't an issue here. We're not contesting anything with regard to the sentencing issue on that. This is a sentencing issue case. He received a sentence of 97 months, 91 of which were due to enhancements found by the district court. She found initially an 18 offense level enhancement for the amount of the loss. The only actual evidence submitted to her was submitted by me via declarations and statements from two expert witnesses, two economists, a professor of economics at Pace University in New York and the former associate dean of economics at Fordham. They both found a loss figure. Professor Filanti found the loss figure to be at the most $1.3 million. Professor Werner found the loss figure to be somewhere under $1 million, his best estimate at $365,000. Vastly different from the court's finding of a loss in excess of $4.5 million, she rejected the finding or the opinions and the evidence submitted via the experts, indicating that they assumed market factors. Then she proceeded to assume that those market factors didn't exist and rendered her a loss figure based on her opinion of what the loss was. My initial position and my basic position here is that this kind of an evaluation does not meet the clear and convincing evidence test required in view of the evidence, which was before the court, which this circuit has indicated must be by clear and convincing evidence in the United States v. Jordan decision. The second sentencing issue related to the finding of the court, which resulted in a lesser enhancement, not an 18-level offense level, but in this case a four-level enhancement due to a finding that there were more than 50 victims. This is a little more difficult argument to make in that apparently there were something like 513 transactions during what's been characterized to the court and which we don't dispute was the basic fraud period here. She indicated at the time of sentencing it didn't look like this was in dispute. I argued otherwise that it was, in fact, in dispute, and I've also argued that in my brief. And the declaration or the statement attached to my sentencing papers by Professor Warner really highlighted this problem. He indicated the trial court's position was basically that because there were so many transactions, it's logical that we must have at least 50 victims here so that the four-level more than 50-victim enhancement would indeed come into play. Professor Warner noted in the materials I filed with the court that although this kind of argument does appeal to intuition, it could be refuted by a detailed account of all those who traded the stock. In other words, and what I argued to the court was if you had someone who purchased the stock during the fraud period who appears to be a victim and, therefore, purchased inflated stock, you need to have some kind of showing that this person didn't sell also during the fraud period and, in fact, make a profit on the stock or sell it sometime later on after the fraud period and make a profit on the stock before he can become a victim within the guidelines definition, which is a person who has sustained any part of the loss. That burden is not up on the defendant. The government has to pay an evidentiary burden with that regard. We didn't have to make that. None was made. The only thing that was submitted to the court was a list of the transactions during the fraud period. And even, I guess, as I recall, and I think I mentioned this in my brief, I'm sure I did, the pre-sentence report was unable to construct a restitution list, which is the normal practice in this district, in the central district, indicating what victims should receive what in terms of restitution because he couldn't, based upon the materials that the government had, figure out who, if any, of the supposed victims actually suffered a loss. So although it's one of those things that seems to have a logical answer, in terms of what the burdens were, it wasn't met by the government. Well, let me stop you there and say, why is it not a logical inference from the evidence that was before the court that there were more than 50 victims, given the number of transactions and the list of Charles Schwab customers, which itself has seated more than 50 people? I don't dispute that there's an inference. Even the materials that I presented by Professor Werner said, you know, that this is an appealing argument. The problem with it, though, is that when you do the kind of analysis that's necessary, this may be refutable. But it wasn't refuted. So why isn't it an acceptable answer? Because the government has a burden by clearing convincing evidence under the Jordan case, since it's a four-level enhancement or above, to show that the enhancement applies. And when you have a situation where it may or may not apply, but, gee, it looks like it might, I don't think that meets the government's burden. If you're going to tell me that it does, then I guess I'm stuck with that. But there's absolutely no proof in the record to support this enhancement, which may or may not be appropriate in this case. The last sentencing issue related to a two-level enhancement for abuse of trust, and under Jordan I guess this is more of a preponderance of the evidence standard rather than the clearing convincing evidence. The application note for the guidelines section relating to the abuse of trust characterizes this enhancement to apply in places where professional or managerial discretion is involved with substantial discretionary judgment, which is ordinarily given considerable deference by, in essence, the victim here. I cited, I think, eight or nine cases in my briefs, all of which indicated you have to have a special relationship with the so-called victim. These arm's length or these commercial-type transactions don't count. Most of the cases I cited are... Well, the relationship here between your client and the victim, whoever that victim might be, isn't really arm's length. I mean, your client is the CEO of a company that's made public statements about itself. The victim is the purchasers of shares in that company, but he's not purchasing from the company. He's purchasing from somebody else at the market. And so it may be true that this is an existing shareholder, although some may be acquiring more shares. It's not an existing shareholder that could be said to have a current, at that moment position relationship of trust. But you don't buy shares in a company unless you have a level of trust in the company's management, and that's what your client was, the company's management. But that's not the kind of trust that the cases talk about is the problem. I mean, that's essentially the argument that the government has made. Well, I don't see how the cases are all that different. I mean, there is a relationship of trust there, isn't there? Yeah, but every one of these cases, even the Moskowitz case on which the government relies, involved a situation where the so-called victim had already posited money or property or something, and it was in the fiduciary responsibility of the person who had it to deal with that money. That's where the discretionary thing comes in. And it talks to, as I said, the application note talks about professional and managerial discretion in dealing with those kinds of situations. He was the CEO. There's no question about it. He never met or even spoke to one of these people that bought on the public market any of these securities. The Burke case out of the Seventh Circuit, which I cite in there, is a very close factual situation where an attorney sold securities to the stock-purchasing public, and the district court imposed the enhancement. And the Seventh Circuit said, no, there's no special relationship with the stock-purchasing public. And they also indicated that this would be true even if the person, the attorney had occupied a position of trust within the company. And that sounds like Thomas Hughes to me. That's exactly what happened here. The Moskowitz case in which the CEO did receive the enhancement, that enhancement was based on him looting the money in the equity position of stockholders in the company by inflating stock, selling his own, and running off with all the money, leaving the company with nothing. The enhancement, it's not even discussed the issue in this case. The enhancement was not based on the sale of stock in a public commercial transaction. I can't find any cases ---- In the Burke case, was the defendant the issuer of the securities in question? I'm sorry, Your Honor? The Burke case, the Seventh Circuit case, it was my impression that in that case, the seller was not himself the issuer or the source of information about the securities in question. Correct. And that's why I added in the statement of the court that they said this analysis would apply even if the person occupied a position of trust within the corporation. So it's telling you that it doesn't differentiate because it was the attorney rather than somebody who actually was on the board of directors or a CEO of the company. The key is the relationship to the public or the person in the public making the transaction, buying the stock. If there's no special relationship, then that situation, it's not that it's not covered by the guidelines. It's just covered by the regular guideline that applies to fraud situations. It doesn't get a special enhancement because of a special relationship vis-à-vis the victims. That's what this enhancement is all about, Your Honor. It's special relationships. That's why I put the examples in the application note deals with bankers that are holding depositors' money, attorneys that are holding clients' money in their trust accounts, things of that nature. And with that, I will sit down. Thank you, Your Honor. Thank you. One moment, Your Honors. Thank you. May it please the Court, David Willingham on behalf of the United States. Your Honors, in this case, the district court did not clearly err in imposing a loss enhancement of 18 levels under the guidelines that were in place at the time of the offense and the condition. In this court, the district court used a common method of valuation in securities fraud cases upon evidence that, in fact, was presented to the court. The unrefuted facts presented to the probation officer and facts cited by the government in its position papers in support of the pleadings with regard to the trading levels in terms of average shares of price during the period of fraud, both before the period of fraud and after the period of fraud, and the trading volume during the fraud period which the defendant committed. Why isn't that a jury question? Why isn't that a jury question? Well, at this point, Your Honor, following both pursuant to the guidelines that were in place at the time of the sentencing in this place, in this conviction, or in this case, and now if the case were set back pursuant to Ameline, it would not be a jury question. It would be a question based upon Booker for the Court to determine both pre-guideline by clear and convincing evidence under the case law in this circuit under Munoz, or now by either clear and convincing evidence or a preponderance of the evidence, depending on the government's position cited in the papers. It is not a jury question. The Court can't consider that evidence at this time. Do you agree that a limited remand under Ameline is appropriate? Yes. The government would concede that in this case a limited remand set forth by the procedures in Ameline III would be appropriate with the district court to determine whether it would impose the same or reasonable sentence initially, and if not, then a sentencing hearing to be heard based on the 3553A factors. Well, would you explain that to me again? Why a trier of fact shouldn't determine the amount of the loss? Yes, Your Honor. Or it shouldn't determine the amount of the loss. In this case, the defendant pled guilty on the eve of trial one week before trial without a plea agreement. The law in place at the time was that the Court could make a reasonable estimate of loss under the guidelines as relevant conduct to the offense. That is set forth in Section 2B at 1.1 with regard to the loss determinations for relevant conduct and is set forth at Note 2C. In this case, the Court is entitled to make a reasonable estimate of the loss and to approximate the number of victims multiplied by the average loss of each victim under the commentary to that guideline. It is a question for the Court to determine as the Supreme Court under Booker found appropriate. It's not a question solely for the determination of the trier of fact at this point, nor was it the case at the time of sentencing. And what the district court did in this case was rely upon precedent in other circuits, because there frankly was no criminal precedent in this circuit, in the Snyder and Hedges cases, to take the average price of the trading of shares during the period of fraud and subtract what happened to those shares by using the average price after the disclosure of the fraud and come up with a calculation to determine what the appropriate amount of loss was. In this case, the Court had a multitude of evidence to make that factual determination. It had all of the trading records as set forth by NASDAQ, trading volume and price records. It had, in fact, expert assistance presented by the defendant. But in this case, it also had expert evidence to controvert the expert's position with regard to outside market factors. The defendant's position in this case and before this Court is premised on the district court's purported just assuming the nonexistence of market factors and simply ignoring the defendant's expert testimony, and that is not what the district court did. In this case — Let me ask you to go ahead and finish. I'm sorry.  In this case, set forth in the excerpt of record of 234, the district court expressly considered and rejected the defendant's expert presentation with regard to outside market factors such as that merger. What happened was eBay and PayPal, PayPal being a purported market competitor of eConnect, merged two days before the period of fraud began in this case. And the government presented evidence in both its papers and exhibits that that had virtually minimal effect on the trading price of eConnect in those two days of trading. And the district court considered that evidence and cited that evidence in terms of rejecting the expert's conclusion that there were outside market factors that held a bearing on the loss of calculation in this particular case. Did the government submit the name of, say, a single victim? It did, Your Honor. I bought this stock. I read that press release. I relied on it, and I've lost money. It did, Your Honor. In fact, there was two ways in terms of the government presenting evidence of victims. One simply, and it relies upon the specific argument with regard to what constitutes a victim in this case. And I'll move on to the victim argument in this case. The government's position is that each person who purchased a share at fraudulently inflated prices, i.e., paid more for those shares than they otherwise would have due to the defendant's fraud that he committed, is a victim in this case. And in this case, the government proposed or presented evidence in two ways of people who were victimized by the offense. One, by a list from just one brokerage house, Charles Shop, of which well over 50 victims engaged in hundreds of transactions at fraudulently inflated prices. And second, the government presented evidence to set forth an excerpt of record, I believe it's 84, and I can find that for you, a victim testimony of a particular victim by the name of Jay Brown. And in that, Jay Brown, it was 89, I'm sorry, an excerpt of record, was a prior holder, shareholder of Econet stock and did not engage in a transaction during this period of fraud. For the specific reason that he relied on the fraudulent information presented by the defendant and decided that he believed it was true, believed in the defendant, and decided that he would hold on to his shares, and in fact, the shares went into the tank after the resumption of trading after that. And that specific defendant or victim is set forth an excerpt of record 89 and argued by the government, explained to the court, and provides a second basis for victims who were victimized in this case for the court to rely on. The victims who did not even trade their shares but simply decided to believe the defendant and the false information that he put into the market and then not trade their shares and lost their shares as a result, at least in terms of this stock. Are there others? The government only presented evidence on record in terms of one as an example of this case. If the court is asking the outside-the-record question, that, the answer is yes, but it's outside the record in this case. We like to stick to the record. I remember one time I had a case, it was a class action, and brought by a lawyer who held one share of stock and every security in the New York Stock Exchange. And so he filed this lawsuit because there was a false press release, and it was settled. And then we had the funds, and we sent out notices to members of the class that we had this money and they should make a claim. I remember we didn't get a single claimant. Step forward. In this case, this is a similar case, Your Honor. As the court is aware from the briefings, there is 1893 some odd million outstanding shares in the market at the time the offense was committed. That's a massive number of shares. And that was the precise reason why the government and probation officer determined that a restitution calculation in this particular case was just too much work to bear by both the probation office and the government. It would have cost well over or close to the amount of funds of restitution in and of itself to fund the drafting of letters and mailings and get the calculation for restitution for each one of those shareholders that had outstanding shares in the market. I'm just curious of your opinion as to whether – is there anything left of Justice Stevens' half of that Booker opinion which would indicate that this, which greatly increased the sentencing, had to either be admitted in this case to the plea or that it were the question for the jury. What is your opinion on that? Is there anything left or is it all just guidelines? With all due respect, Your Honor, the government's position of what I understand of it is that it is for the district court to now make the guideline calculation under the guidelines. And those calculations are then advisory. And in this case, if this were remanded, the court could affirm its previous guideline calculation and then make a statement as to what it would believe a reasonable sentence would be considering the 3553A factors. I guess we'll – Hopefully that answers your question. I'm trying to get your opinion just because I'm curious as to whether there is anything left that on Stevens' part of that opinion that something either has to be admitted or submitted to the jury. The government's position at this point is that, no, there's nothing left of that portion of the opinion that, in fact, the district court can make those determinations under the guidelines. Okay. Well, why wasn't that worked out in the plea bargain? In this case, Your Honor, again, it would be outside the record, but there were negotiations with regards to the amount of loss. That was actually discussed in the sentencing transcript in this case, so I suppose it's not outside the record. And the parties simply couldn't come up with an agreement. At that point, the parties proceeded as if we're going to trial, but then the defendant decided at the last minute to plead guilty, open to the substance of the indictment, three securities fraud counts and the criminal contempt charge. If I may speak briefly, I know I only have 20 seconds remaining. With regards to the abusive position of trust, it is clear that this defendant occupied a position of both fiduciary responsibility to his shareholders as well as actually dominating the flow of information via his position in the company out to the general public. Here the defendant occupied a position and, in fact, used that position to dominate that flow of information. That is clear from the record. And the district court found that he actually ran the show, which is a quote from the district court, that he uses that position to control the overflow of information, in fact, overruling committee decisions on press releases and information to be shared and cutting them out when he deemed it appropriate and threatening to fire individuals who did not agree. So for both policy considerations in regard to the abusive position of trust and factual presentations made by the government that that is what, in fact, occurred in this case, that enhancement is appropriate. And with regard to the number of victims, if the Court has any questions on any other matters, I'd be happy to answer, and otherwise I'll submit on the briefs. Thank you. Thank you. Mr. Henderson? I see I have a minute and four seconds more than USC needed, Your Honor. Well, it's your chance to score at least three points. Your number is going up, actually. You're in deficit, but so is the government. Very briefly, what I'm asking this Court to do is to find as a matter of law based on the record that the abusive trust enhancement doesn't apply here, that the 50-victim enhancement was clearly not supported by sufficient evidence under the clear and convincing evidence standard, and that the case be remanded for further proceedings vis-à-vis the loss amount, which I think is really the gist of the case. I have a position that in order to be a person in a position of trust, it has to have, that person has to have a fiduciary relationship such as trustee, or can't you be in a position of trust other than as a trustee? I'm going to hedge a little bit because I don't know how to interpret some of the Court's language. A fiduciary relationship clearly works. But the cases don't talk always in terms of fiduciary relationships. They often use the word special relationships, and so that can be something less than a fiduciary relationship, but obviously the intent of those cases when you read the kind of analysis that take place, at least in the ones that I've cited, is that it's something akin to a fiduciary relationship. It's a special relationship. It's a relationship with the victim more than in the commercial marketplace in which these stocks were sold that allows somebody to take advantage. Otherwise, it's no different than any other fraud where I misrepresent something about my car and sell it to someone. It's the same kind of basic fraud. It's the same kind of loss calculation at the end of the day. Without a special relationship, you just don't get this special enhancement. The relationship between the CEO who's running the show and all the stockholders. Because, in essence, it's an arm's-length transaction in the marketplace. The people in the marketplace have an opportunity to find out more things before they do their investment. In this particular case, there was nothing on any of these releases that indicated that Thomas Hughes was responsible for them. So nobody in this marketplace that bought this stock knew that this was because of some action by Thomas Hughes. In fact, it was, but none of the purchasing public knew that. So there's no way, under my analysis of the Rowland cases, that you could have anything that even approaches this special relationship or, at the end of the line, the fiduciary relationship that's talked about or the kind of special managerial professional discretion called for in the guidelines definition. They were not aware of his very favorable statements about the company? They were aware of the – well, we don't know. But we assume they were aware of the statements in the public releases. Yeah. But they weren't relying on any relationship with Mr. Hughes. They didn't know that these came from Mr. Hughes. They were just, you know, press releases that came out of companies. Like, you know, they had no indicating of who the author was or who caused them to be authored and to release them to the public. So you can't have really any kind of relationship with the public in that circumstance, much less a special or fiduciary one. But if you're the one that's issuing them, responsible for it. You're responsible for the fraud, and that's where you should get sentenced, the fraud, but not a special relationship with the public that enables him to do the fraud. Any CEO in any company could issue stock and inflate it, and the public would be frauded, and he should be punished. And that's what drives the appropriate punishment here, not an enhancement based upon a non-existent relationship. Thank you, Your Honor. I appreciate it. The bottom line is you're looking for a Booker-Ameline remand. Yes, Your Honor. And I'm a little troubled by the government's position that the court can just apply this, finding it had vis-a-vis the loss in view of the rationale of Ameline and Booker, except without a jury finding that, gee, the loss must be exactly what I said, $4,600,000, but I'm doing this within my discretion because the guidelines are advisory, but I'm using the guidelines as an advisory tool pursuant to the Section 3553 analysis,  so what the government is saying is that the trial court should do what's precluded by Booker and Ameline and say it's advisory but then use that as a factor in which the sentence is actually based under the 3533 analysis. The remedial portion of Booker, Justice Breyer tried to keep as much life as he could into the guidelines by saying the district court had to look at it, so I think the government's got a basis for saying that. In fact, I understand the concern you raise, but I think Booker Part 2 sort of tells the district court you can't disregard these. You have to look at them, and then you're free to do what you want. I understand. I just wanted to raise that. It's a difficult issue, and I assume someday the court will probably actually deal with a corollary to Booker-Ameline based on that kind of analysis. I think it has to be that court. They got us into this mess. They'll probably have to get us out. Well, yeah, and Breyer had a hand in it, too. So he spent a lot of time on these guidelines. But the bottom line is it can go back under Booker-Ameline, limited remand, and the judge can look at the guidelines again and then say, well, all things considered, this is a reasonable sentence, given the number of people involved, et cetera, et cetera, and that's the end of it. Well, I would hope that there would be some equity there. I mean, if this court finds that as a matter of law, the abuse of trust enhancement should not apply under these facts and or that there was insufficient evidence under the 50 victims enhancement, then I don't think, I can't imagine any reasonable judge saying, okay, my sentence was unreasonable in being calculated on those kind of factors, which were inappropriate here. And I'm making an assumption here, but I think that's what the Ameline progeny says, that it may well be what we have to do in terms of resentencing. Well, the judge could look at the guidelines and say, fine, I've looked at them and impose a sentence that takes in the maximum punishment allowed by law. Well, I'm not sure that that's actually possible under North Carolina v. Pierce. When a defendant prevails upon appeal and gets a resentencing or something, the sentence can't be increased. The only thing that can be done is the sentence can be upheld or that it can be reduced. And if a judge says I'm relying on these factors and here is the sentence and this court tells them that one or two of those factors may be inappropriate, I can only reasonably assume that the sentencing judge will deal with that in a fair and equitable manner. All right. Let's hope. Let's hope. Thank you. It's always a pleasure. Thank you. Good to see you again.
judges: Hug, Pregerson, Clifton